**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

| | | |
|---|---|---|
| PENGCHENG LI, et. al., | ) | **Civil Action No.:**_____ |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| BAR WORKS, INC. | ) | **JURY TRIAL DEMANDED** |
| RENWICK HADDOW | ) | |
| ZOIA KYSELOVA | ) | |
| BAR WORKS CAPITAL, LLC | ) | |
| BAR WORKS SAN FRANCISCO 1, LLC, | ) | |
| BAR WORKS MANAGEMENT, INC., | ) | |
| BAR WORKS TRIBECA, INC., | ) | |
| BAR WORKS CHAMBERS, LLC, and | ) | |
| BAR WORKS 7th AVENUE, INC. | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

-----------------------------------------------------------------

Plaintiffs, Pengcheng Li, Jing Yi, Xiaohui Liu, Jing Yang, Zhuozheng Wang, Yanling Wang, Lei Tang, Yongliang Guo, Yinghua Gu, Jingyan Li, Xue Li, Yixin Liu, Jiansong Yang, Xinxin Ma, Bo Ye, Min Hao, Yuechao Li, Shih-Chun Shan, Chin-Kuang Peng, Guangrong Fu, Hanbo Li, Meng Yu, Zhijian Li, Weiwei Li, Zhaojun Gui, Zhongyun Mao, Qian Li, Xuemei Wang, Min Su, Wen Xia, Wei Gao, Lei Chen, Yali Hu, Yi Yuan, Xiaolei Shen, Qing Wan, Dongmei Ni, Bin Xu, Ying Ni, Liancheng Chen, Yinsi Yu, Di Wu, Liangzi Su, Yu Fang, Linlin Sun, Yuhan Yang, Yuechun Zhang, Cui Li, Jiaxi Qi, Yidong Pan, Yan Xie, Kechun Cao, Xiang Yu, Tingting Zhen, Juan Chu, Hui Dong, Xiuqiao Sun, Xuelian Zhang, Yonggang Chen, Lingyun Xu, Meizhen Li, Weian Gu, Fang Liu, Bowen Zhang, Xuehua Liu, Paulo Denny Liu, Meng Yu, Mei'e You, Haiying Huang, and Ziling Rao (collectively, "Plaintiffs"), by and through their attorneys, file this complaint against the defendants, Renwick Haddow ("Haddow"), Zoia Kyselova ("Kyselova"), Bar Works, Inc. ("BWI" or the "Company"), Bar Works Management, Inc. ("Bar Works Management"), Bar Works Tribeca, Inc. ("Bar Works Tribeca"), Bar Works San Francisco 1, LLC ("Bar Works San Francisco"), Bar Works 7th Avenue, Inc. ("Bar Works 7th Avenue"), Bar Works Chambers, LLC ("Bar Works Chambers"), and Bar Works Capital, LLC ("Bar Works Capital", collectively, "Defendants"), alleging as follows:

## NATURE OF THE ACTION

1.     This action involves securities fraud by Defendants against a group of foreign individual investors.

2.     Haddow is from the United Kingdom.  Kyselova is Haddow's wife.  They have orchestrated a Ponzi scheme by using Defendants and the Related Parties named in this Complaint to solicit investments from investors inside and outside of the United States.

3.      Beginning in 2015, Bar Works purportedly signed long-term leases at various locations around the country to create shared workspaces managed by various subsidiaries. Haddow and Kyselova then used these Bar Works entities to sell workspace units by distributing false and misleading prospectuses and other marketing materials to investors both through third party marketers and through Bar Works' website.

4.      Defendants promised to investors, such as Plaintiffs, that they would receive steady income and capital appreciation and that Defendants would set up an efficient trading platform to allow investors to trade their investments freely.

5.      Defendants concealed the fact that Haddow was the mastermind behind the Bar Works securities scheme so that Haddow's previous misconduct would not taint the image of Bar Works.  To achieve this goal, Defendants created a fictitious person named "Jonathan Black" ("Black") as the chief executive of Bar Works entities.  For a short time period in early 2017, after investigative journalists questioned the existence of Black, Defendants hired Frank Kinard ("Kinard") to take over Black's role at Bar Works.  Kinard resigned his post at Bar Works shortly after and later admitted that Black was an alter ego for Haddow.

6.      Defendants suspended the guaranteed monthly payments to Plaintiffs and other Bar Works investors indefinitely in or around March 2017.  Despite Plaintiffs' repeated requests, Defendants failed to provide a reasonable explanation regarding the non-payments.

7.      The Ponzi scheme began to unravel as investigative journalists revealed Haddow's previous misconduct and the deceit underlying Bar Works' leasing program/investment scheme.

8.      The U.S. Securities Exchange Commission (the "SEC"), the U.S. Department of Justice (the "DOJ"), and the Federal Bureau of Investigation conducted joint investigations

against Haddow and the Bar Works entities (the "Government Investigation") and confirmed the Bar Works Ponzi scheme orchestrated by Haddow.  The SEC filed a complaint (the "SEC Complaint") in the Southern District of New York on June 30, 2017, alleging that Haddow, BWI, and Bar Works 7th Avenue, Inc. violated the federal securities laws.  On the same day, The DOJ also announced criminal charges against Haddow.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 77v; 15 U.S.C. § 78aa; 28 U.S.C. § 1331.  Defendants, directly or indirectly, singly or in concert, have made use of the means or instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein.

10.     This Court may exercise supplemental jurisdiction over the state law claims as they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As alleged herein, the state and federal claims are derived from a common nucleus of operative fact.

11.     This Court has personal jurisdiction over Defendants who have violated the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").  These federal laws permit nationwide service of process upon defendants who maintain sufficient contacts with the United States as a whole.  In addition, Defendants and the Related Parties, transacted business in this District substantially.  From 2015 to 2017, Defendants and the Related Parties operated three business locations and planned on operating four more locations in this District.

12.     Venue is proper in this District pursuant to Section 22 of the Securities Act, Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) and (c).  Many of the acts and omissions charged herein, including the preparation and dissemination to the investors of materially false and misleading information, occurred in substantial part in this District. Defendant BWI, parent company for the Bar Works entities maintained its corporate headquarters in this District.  Defendants Bar Works Management, Bar Works 7th Avenue, and Bar Works Tribeca also have business addresses in this District.

## THE PARTIES

**I.    The Plaintiffs**

13.     Plaintiffs are natural persons.  They are citizens of and reside in the People's Republic of China.

**II.    The Defendants**

14.     BWI is a Delaware corporation with its principle place of business in New York, New York.  Based on a document distributed to Plaintiffs by Defendants titled "Bar Works Group of Companies Organizational Chart ("Bar Works Chart")", it is the parent company of other Bar Works entities, including, but not limited to, Bar Works Management, Bar Works Capital, Bar Works 7th Avenue, and Bar Works Tribeca. It also served as Plaintiffs' counterparty on lease documents for workspaces at Bar Works' 41 West 46th Street location.  Black purportedly signed these lease documents on behalf of BWI.

15.     Upon information and belief, Defendant Haddow is a foreign national believed to be domiciled in New York City, New York.  Haddow did not turn himself into the authorities after the U.S. government agencies filed criminal charges against him.  His whereabouts is currently unknown.

5

16.     Upon information and belief, Defendant Kyselova is a foreign national believed to be domiciled in New York City, New York.  Kyselova is Haddow's wife.

17.     Bar Works Management is a New York corporation with its principle place of business in New York, New York.  Based on the Bar Works Chart, it is a subsidiary of BWI.  It served as Plaintiffs' counterparty on all sub-lease agreements.  Black purportedly signed the sub-lease agreements on behalf of Bar Works Management.

18.     Bar Works Capital is a California limited liability corporation.  Based on the Bar Works Chart, it is a subsidiary of BWI.  It served as Plaintiffs' counterparty on lease documents for workspaces at Bar Works' 615 Sacramento Street location.  Black purportedly signed these lease documents on behalf of Bar Works Capital.  Based on the Grant Deed dated June 20, 2016, it is the owner of Bar Works' San Francisco location at 615 Sacramento Street.  According to the SEC Complaint, Defendants used $1.55 million of the investment funds they collected from investors unlawfully in purchasing Bar Works' San Francisco location.

19.     Bar Works Tribeca is a New York corporation with its principle place of business in New York, New York.  Based on the Bar Works Chart, it is a subsidiary of BWI.  It served as Plaintiffs' counterparty on lease documents for workspaces at Bar Works' 47 West 39th Street and 70 White Street locations.  Black purportedly signed these lease documents on behalf of Bar Works Tribeca.

20.     Bar Works San Francisco is a California limited liability corporation with its principle place of business in San Francisco, California. It served as Plaintiffs' counterparty on lease documents for workspaces at Bar Works' 615 Sacramento Street location.   Black purportedly signed these lease documents on behalf of Bar Works San Francisco.

21.    Bar Works 7th Avenue is a New York corporation with its principle place of business in New York, New York.  Based on the Bar Works Chart, it is a subsidiary of BWI.  It served as Plaintiffs' counterparty on lease documents for workspaces at Bar Works' 47 7th Avenue South location.  Black purportedly signed these lease documents on behalf of Bar Works 7th Avenue.

22.    Bar Works Chambers has its principle place of business in New York, New York and is a subsidiary of BWI based on the Bar Works Chart.  It served as Plaintiffs' counterparty on lease documents for workspaces at Bar Works' 95 Chambers Street location.  However, Plaintiffs cannot find any corporate registration information for this company.

**III.    The Related Parties**

23.    Bar Works Metropolitan, Inc. is a New York corporation with its principle place of business in New York, New York.  Based on the Bar Works Chart, it is a subsidiary of BWI.

24.    Bar Works West Village, Inc. is a New York corporation with its principle place of business in New York, New York.  Based on the Bar Works Chart, it is a subsidiary of BWI.

25.    Pod Works, Inc. is a New York corporation.  Based on the Bar Works Chart, it is a subsidiary of BWI.

26.    Bar Works USA LLC is a New York limited liability corporation.

27.    Bar Works Eighth Avenue, Inc. is a New York corporation.

28.    Bar Works Oakland, LLC is a California limited liability corporation.

29.    Bar Works San Francisco OPS, LLC is a California limited liability corporation.

30.    Bar Works Nevada, LLC is a Nevada limited liability corporation with its principle place of business in Las Vegas, Nevada.

31.     Bar Works Miami, LLC is a Florida limited liability corporation with its principle place of business in Miami, Florida.

## FACTS COMMON TO ALL CAUSES OF ACTION

### I.     Haddow's Previous Fraudulent Schemes

32.     Haddow is a foreign national who was involved in at least the two following scams before he orchestrated the Bar Works scheme:

33.     In or around November 2008, the U.K.'s Insolvency Service—a U.K. government agency whose work includes administering bankruptcies and disqualifying unfit directors in corporate failures—disqualified Haddow from serving as a director of Branded Leisure, Plc for eight years.  This decision was based on Haddow's making false and misleading statements about the financial condition of the company and his failure to keep and preserve accounting records for the company.

34.     On December 10, 2008, the U.K. Insolvency Service issued a news release announcing the disqualification and noted: "The Schedule of Unfit Conduct which formed a part of the Disqualification Undertaking given by Mr. Haddow included…that he caused and/or allowed [Branded Leisure] to make inaccurate and misleading announcements…as to the progress of the company's building work, sales performance of the company, and the financial performance of the company…[and] [t]hat he caused and/or allowed the company to make false representations in a Board minute…in particular as to the financial position and prospects of the company, which caused investors to lose £500,000 in [a certain fund]."

35.     In July 2013, the U.K.'s Financial Conduct Authority ("FCA") filed a court action against Haddow and others, alleging that the defendants unlawfully promoted "collective investment schemes" involving Capital Alternatives Limited and its affiliates when they were not

authorized to do so and that the investment schemes were sold through misleading statements. On February 14, 2014, after holding a trial on the preliminary issue of whether the schemes were "collective investment schemes," the High Court of Justice (Chancery Division) ruled that they were.  On March 25, 2015, this judgment was affirmed by the Court of Appeal (Civil Division).

## II.     Defendants Defrauded Bar Works Investors

### A.    Haddow Created, Owned, and Controlled Bar Works Entities with the Assistance of Kyselova

36.     On or about July 24, 2015, Haddow founded Bar Works and registered its first entity, BWI, in Delaware.  Defendants have held BWI as the parent company of various Bar Works entities.  Haddow also registered BWI both in New York and California as foreign companies.  He signed BWI's California registration document as Chief Executive Officer ("CEO") of the Company and signed BWI's 2017 Statement of Information (California registration document) as CEO and Director of the Company.

37.     On or about December 21, 2015, Haddow registered Bar Works Management in New York.  The registration address is 160 West 66th Street, Suite 33J, New York, New York.  Upon information and belief, this is a one-bedroom apartment in New York that Haddow and Kyselova rented at the time.  Haddow also used this address as his contact information when he signed the loan documents with AFF Sacramento, LLC on June 20, 2016 in obtaining a loan to purchase Bar Works' San Francisco location at 615 Sacramento Street.

38.     On or about May 5, 2016, Haddow registered Bar Works Capital in California. He signed the State of Information as the Manager of the company.

39.     From 2015 to 2017, Bar Works opened three shared workspace locations in New York (47 West 39th Street, 47 7th Avenue South, and 41 West 46th Street), one location in Los Angeles (6526 West Sunset Boulevard), one location in San Francisco (615 Sacramento Street),

and one location in Miami (31 NW 23rd Street).  According to its website, Bar Works planned to open four additional locations in New York (95 Chambers Street, 70 White Street, 116 8th Avenue, and 242 Metropolitan Avenue) and one location in Las Vegas (1205 South Main Street).

40.    Upon information and belief, Haddow also formed other Bar Works entities for different Bar Works' shared workspace locations, including Defendant Bar Works Tribeca and some of the Related Parties named in this Complaint.  Haddow signed the registration documents on behalf of Bar Works West Village, Inc., Bar Works Metropolitan, Inc., Bar Works San Francisco 1, LLC, and Bar Works Oakland, LLC.

41.    Based on the Government Investigation, Haddow set up different bank accounts for some of the Bar Works entities and was the sole authorized signatory on each of these Bar Works accounts.

42.    Upon information and belief, Kyselova became Haddow's close associate since at least 2014 and is Haddow's wife.  She was actively involved in the formation of the various Bar Works entities and assisted Haddow to control the Bar Works entities.  She has been a director and operations executive of Bar Works entities who participated the day-to-day operations of the Bar Works entities.

**B.  Defendants Sold the Bar Works Securities to Investors**

43.    The Government Investigation revealed that, upon registering BWI on July 24, 2015, Haddow purchased all 20 million Bar Works shares for $2,000 on July 29, 2015.

44.    The Government Investigation also revealed that, from October 2015 to April 2017, Haddow used InCrowd Entity, Inc., an unregistered broker-dealer he created and controlled, and other third party marketers to promote and sell Bar Works securities to investors both inside and outside of the United States.

45.    According to the SEC Complaint, Bar Works offered at least three types of securities: (1) shares of Bar Works stock, (2) notes, bearing an annual fixed interest rate for five years, which could be converted to ordinary shares of Bar Works stock at any time after the first year of issuance, and (3) leases coupled with sub-leases.

46.    For the leases coupled with sub-leases securities, investors were typically offered a ten-year lease (the "Lease") on one or more numbered workspace units at a specific Bar Works location in a document with similar titles such as "Wealth Builder Lease Agreement," "Wealth Starter Lease Agreement," or "Wealth Accelerator Lease Agreement."[1]  For Bar Works' San Francisco location, investors were offered a 99-year lease.

47.    One of the Bar Works subsidiaries served as the investors' counterparty on the Lease as "Landlord" and investors served as "Lease Holder."  For example, Bar Works Chambers served as the counterparty on Leases for workspaces at Bar Works' 95 Chambers Street location in New York, New York.  Bar Works Capital served as the counterparty on workspace Leases at Bar Works' San Francisco location.

48.    To purchase a Lease on an individual workspace, investors paid BWI or one of its subsidiaries an up-front, one-time purchase price, ranging from $25,000 to $30,000, depending on the location of the workspace and the number of the units they purchased.[2]

49.    The Leases offered the investors an option to exit from the investments after holding the investments for two or more years.  Bar Works can also exercise this option.  If Bar

---

[1] Bar Works used the "Wealth Starter Lease Agreement" for any investors who purchased two workspace units, the "Wealth Accelerator Lease Agreement" for any investors who purchased three or four workspace units, and the "Wealth Builder Lease Agreement" for any investors who purchased five or more workspace units.

[2] While the unit price for Bar Works' other locations is $25,000, Bar Works charged $30,000 for a single unit for its San Francisco location.

Works chooses this option, it will need to pay investors 125% of the purchase price within the 180 days upon executing this option.

50. The Leases also stated that the Landlord would "offer a matched trading facility where the Lease Holder can sell their interest any time if required."

51. Along with each Lease, each investor also signed a sub-lease ("Sub-Lease") for the Bar Works workspaces set out on the investor's Lease.

52. Often times, Black purportedly signed both the Lease and the Sub-Lease on behalf of the Bar Works' subsidiaries serving as the counterparties on the Lease and the Sub-Lease.

53. Under the terms of each Sub-Lease, a BWI's subsidiary, usually Bar Works Management, served as Sub-Lease Holder and agreed to pay each investor back his full up-front purchase price for the corresponding Lease at the end of the Lease's term.

54. Under the terms of each Sub-Lease, Bar Works Management also agreed to pay the investor a fixed monthly "rental" fee, amounting to a percentage of the investor's original Lease purchase price, for the duration of the Lease's term.  The Sub-Lease did not place any contingencies on the monthly payment.  Investors were guaranteed of a fixed monthly rental payment regardless whether Bar Works could rent out the workspaces as specified in the Leases and the Sub-Leases.

55. Bar Works typically offered a higher annual interest rate to investors who purchased Leases on more workspace units.

56. Under the Sub-Lease, Bar Works also promised that the investors could receive 50% of the rent increase (if the Sub-Lease Holder increased its rental charge to third party renters) after holding the investments for two or more years.

57.     Based on the documents received by Plaintiffs, both the Leases and Sub-Leases are governed by the New York law.

**C. Plaintiffs' Investment Transactions**

58.     Each Plaintiff purchased leases coupled with sub-leases on one or more workspace units at Bar Works' operating locations at New York and/or San Francisco.

59.     Each Plaintiff, except for Pengcheng Li, received payments on a quarterly basis.[3] Each Plaintiff, except for Pengcheng Li, received a "Supplement to Sub-Lease Agreement" signed by Black on behalf of Bar Works Management, in which Bar Works Management agreed to make the rental payment to each Plaintiff quarterly.  It further stated that if Bar Works failed to make the payment "on or before the last working day of March, June, September, and December," it would pay these Plaintiffs a penalty charge "at 6% above the standard bank rate."

60.     On or about August 25, 2016, Pengcheng Li invested four (4) units at Bar Works' 615 Sacrament Street location (unit numbers: 8083, 8808, 7686, 7635) and paid the purchase price of $120,000.  Bar Works Capital and Li entered into a "San Francisco Lease Agreement." The Lease term is 99 years.  On the same date, Bar Works Management and Pengcheng Li signed a "San Francisco Sub-Lease Agreement," in which Li subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,250 per month.  As of May 2017, Li has not received the guaranteed monthly payment.

61.     On or about September 23, 2016, Pengcheng Li invested thirteen (13) units at Bar Works' 615 Sacramento Street location (unit numbers: 7189, 7038, 7915, 8214, 7796, 9186, 7318, 9500, 8891, 9494, 9769, 9936, 9696) and paid the purchase price of $390,000.  Bar Works Capital and Li entered into a "San Francisco Lease Agreement."  The Lease term is 99 years.  On

---

[3] Pengcheng Li received payments on a monthly basis.

the same date, Bar Works Management and Li signed a "San Francisco Sub-Lease Agreement," in which Li subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $4,062.50 per month.  As of May 2017, Li has not received the guaranteed monthly payment.

62.     On or about October 26, 2016, Pengcheng Li invested eighteen (18) units at Bar Works' 95 Chambers Street location (unit numbers: 6935, 9009, 8374, 8192, 8322, 7693, 7842, 7135, 7422, 8161, 9539, 7350, 8304, 9768, 8985, 8086, 8479, 7968) and paid the purchase price of $450,000.  Bar Works Chambers and Li entered into a "Wealth Builder Lease Agreement." The Lease term is ten years.  On the same date, Bar Works Management and Li signed a "Wealth Builder Sub-Lease Agreement," in which Li subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $6,000 per month.  As of May 2017, Li has not received the guaranteed monthly payment.

63.     On or about September 28, 2016, Jing Yi invested ten (10) units at Bar Works' 95 Chambers Street location (unit numbers: 7823, 9978, 7851, 8584, 9419, 7252, 7891, 7937, 8390, 7657) and paid the purchase price of $250,000.  Bar Works Chambers and Yi entered into a "Wealth Builder Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Yi signed a "Wealth Builder Sub-Lease Agreement," in which Yi subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $3,333 per month.  Yi paid the purchase price via a wire transfer on September 27, 2016 to BWI's JPMorgan Chase account.  As of March 2017, Yi has not received the guaranteed payment.

64.     On or about November 9, 2016, Xiaohui Liu invested four (4) units at Bar Works' 95 Chambers Street location (unit numbers: 9759, 8271, 7811, 9915) and paid the purchase price

of $100,000.   Bar Works Chambers and Liu entered into a "Wealth Accelerator Lease Agreement."  The Lease term is ten years.  On the same day, Bar Works Management and Liu signed a "Wealth Accelerator Sub-Lease Agreement," in which Liu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,292.00 per month.  Liu received two letters from Tahyira Cordner from Bar Works Inc Operations, dated October 12 and November 9, 2016, respectively, acknowledging that Bar Works received the entire purchase price from her.  As of March 2017, Liu has not received the guaranteed payment.

65.     On or about October 21, 2016, Jing Yang invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 8791, 9199) and paid the purchase price of $50,000. Bar Works Chambers and Yang entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same day, Bar Works Management and Yang signed a "Wealth Starter Sub-Lease Agreement," in which she subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  As of March 2017, Yang has not received the guaranteed payment.

66.     On or about September 12, 2016, Yanling Wang invested one (1) unit at Bar Works' 615 Sacramento Street location (unit number: 7838) and paid the purchase price of $30,000.  Bar Works Capital and Wang entered into a "San Francisco Lease Agreement."  The Lease term is 99 years.  On the same day, Bar Works Management and Wang signed a "San Francisco Sub-Lease Agreement," in which she subleased the purchased workspace to Bar Works Management in exchange for guaranteed profits in the amount of $312.50 per month. Wang sent the purchase price via a wire transfer to BWI's JPMorgan Chase account on September 12, 2016.  Wang received a letter from Tahyira Cordner from Bar Works Inc

Operations, dated September 12, 2016, acknowledging that Bar Works received the entire purchase price from her.  As of March 2017, Wang has not received the guaranteed payment.

67.     On or about September 13, 2016, Zhuozheng Wang invested two (2) units at Bar Works' 615 Sacramento Street location (unit number: 7129, 9672) and paid the purchase price of $60,000.  Bar Works Capital and Wang entered into a "San Francisco Lease Agreement."  The Lease term is 99 years.  On the same day, Bar Works Management and Wang signed a "San Francisco Sub-Lease Agreement," in which she subleased the purchased workspace to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Wang received a welcome letter from Tahyira Cordner from Bar Works Inc Operations, dated October 12, 2016, acknowledging her investment in the Bar Works securities.  As of March 2017, Wang has not received the guaranteed payment.

68.     On or about September 6, 2016, Lei Tang invested one (1) unit at Bar Works' 615 Sacramento Street location (unit number: 7218) and paid the purchase price of $30,000.  Bar Works Capital and Tang entered into a "San Francisco Lease Agreement."  The Lease term is 99 years.  On the same day, Bar Works Management and Tang signed a "San Francisco Sub-Lease Agreement," in which he subleased the purchased workspace to Bar Works Management in exchange for guaranteed profits in the amount of $312.50 per month.  As of March 2017, Tang has not received the guaranteed payment.

69.     On or about September 29, 2016, Yongliang Guo invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 7974, 9158) and paid the purchase price of $50,000.  Bar Works Chambers and Guo entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Guo signed a "Wealth Starter Sub-Lease Agreement," in which he subleased the purchased workspaces to Bar Works

16

Management in exchange for guaranteed profits in the amount of $625 per month.  Guo paid the purchase price via a wire transfer to BWI's JPMorgan Chase account.  He purchased these two units from another investor.  A document titled "Change of Lease Ownership Agreement" was prepared.  Black signed this document on December 2, 2016 on behalf of Bar Works.  Guo and the other investor signed this document on December 5, 2016.  As of March 2017, Guo has not received the guaranteed payment.

70.     On or about May 20, 2016, Yinghua Gu invested five (5) units at Bar Works' 70 White Street location (unit numbers: 8330, 9684, 9687, 8244, 7582) and paid the purchase price of $125,000.  Bar Works Tribeca and Yinghua Gu entered into a "Wealth Builder Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Yinghua Gu signed a "Wealth Builder Sub-Lease Agreement," in which Yinghua Gu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,667 per month.  Yinghua Gu paid the purchase price via a wire transfer on May 16, 2016 to Bar Works Tribeca's JPMorgan Chase account.  She was provided a Certificate of Ownership, dated May 20, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated May 20, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Yinghua Gu has not received the guaranteed payment.

71.     On or about October 3, 2016, Jingyan Li invested one (1) unit at Bar Works' 95 Chambers Street location (unit number: 7772) and paid the purchase price of $25,000.  Bar Works Chambers and Jingyan Li entered into a "Single Workspace Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Jingyan Li signed a "Single Workspace Sub-Lease Agreement," in which Jingyan Li subleased the purchased

workspace to Bar Works Management in exchange for guaranteed profits in the amount of $292 per month. Jingyan Li paid the purchase price via a wire transfer on October 3, 2016 to BWI's JPMorgan Chase account. She received a letter from Tahyira Cordner from Bar Works Inc Operations, dated October 3, 2016, acknowledging that Bar Works received the purchase price from her. As of March 2017, Jingyan Li has not received the guaranteed payment.

72.    On or about June 22, 2016, Xue Li invested two (2) units at Bar Works' 70 White Street location (unit numbers: 8914, 9117) and paid the purchase price of $50,000. Bar Works Tribeca and Xue Li entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Xue Li signed a "Wealth Starter Sub-Lease Agreement," in which Xue Li subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. Xue Li paid the purchase price via a wire transfer on June 17, 2016 to Bar Works Tribeca's JPMorgan Chase account. She was provided a Certificate of Ownership dated June 22, 2016, signed by Black as Chief Executive of BWI. She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated June 22, 2016, acknowledging that Bar Works received the purchase price from her. As of March 2017, Xue Li has not received the guaranteed payment.

73.    On or about October 13, 2016, Yixin Liu invested five (5) units at Bar Works' 95 Chambers Street location (unit numbers: 8461, 8721, 8788, 8186, 9963) and paid the purchase price of $125,000. Bar Works Chambers and Yixin Liu entered into a "Wealth Builder Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Yixin Liu signed a "Wealth Builder Sub-Lease Agreement," in which Yixin Liu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,667 per month. Yixin Liu paid the purchase price via three wire transfers to BWI's

JPMorgan Chase account.  Liu was provided a Certificate of Ownership dated October 13, 2016, signed by Black as Chief Executive of BWI.  He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated October 13, 2016, acknowledging that Bar Works received the purchase price from him.  As of March 2017, Yixin Liu has not received the guaranteed payment.

74.     On or about May 26, 2016, Jiansong Yang invested five (5) units at Bar Works' 70 White Street location (unit numbers: 7826, 9447, 9666, 7706, 7122) and paid the purchase price of $125,000.  Bar Works Tribeca and Jiansong Yang entered into a "Wealth Builder Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Jiansong Yang signed a "Wealth Builder Sub-Lease Agreement," in which Jiansong Yang subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,667 per month.  Jiansong Yang paid the purchase price via three wire transfers to Bar Works Tribeca's JPMorgan Chase account.  He was provided a Certificate of Ownership, dated May 26, 2016, signed by Black as Chief Executive of BWI.  He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated May 24, 2016, acknowledging that Bar Works received the purchase price from him.  As of March 2017, Jiansong Yang has not received the guaranteed payment.

75.     On or about May 31, 2016, Xinxin Ma invested three (3) units at Bar Works' 70 White Street location (unit numbers: 8369, 8581, 9373) and paid the purchase price of $75,000.  Bar Works Tribeca and Xinxin Ma entered into a "Wealth Accelerator Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Xinxin Ma signed a "Wealth Accelerator Sub-Lease Agreement," in which Xinxin Ma subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $969

per month.  Xinxin Ma paid the purchase price via two wire transfers to Bar Works Tribeca's JPMorgan Chase account, the first one with the amount of $25,000 and the second one with the amount of $50,000.  Xinxin Ma was provided a Certificate of Ownership, dated May 31, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated May 31, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Xinxin Ma has not received the guaranteed payment.

76.     On or about June 7, 2016, Bo Ye invested five (5) units at Bar Works' 70 White Street location (unit numbers: 8250, 9788, 9612, 8359, 9332) and paid the purchase price of $125,000.  Bar Works Tribeca and Bo Ye entered into a "Wealth Builder Lease Agreement." The Lease term is ten years.  On the same date, Bar Works Management and Bo Ye signed a "Wealth Builder Sub-Lease Agreement," in which Bo Ye subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,667 per month. Bo Ye paid the purchase price on June 3, 2016 via a wire transfer to Bar Works Tribeca's JPMorgan Chase account.  Bo Ye was provided a Certificate of Ownership, dated June 7, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated June 7, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Bo Ye has not received the guaranteed payment.

77.     On or about February 5, 2016, Guangrong Fu invested two (2) units at Bar Works' 41 West 46th Street location (unit numbers: 8692, 8841) and paid the purchase price of $50,000.  BWI and Guangrong Fu entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Guangrong Fu signed a "Wealth Starter Sub-Lease Agreement," in which Guangrong Fu subleased the purchased

20

workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Guangrong Fu was provided a Certificate of Ownership, dated February 5, 2016, signed by Black as chief executive of BWI.  As of March 2017, Guangrong Fu has not received the guaranteed payment.

78.     On or about February 3, 2016, Hanbo Li invested two (2) units at Bar Works' 41 West 46th Street location (unit numbers: 7514, 9118) and paid the purchase price of $50,000. BWI and Hanbo Li entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Hanbo Li signed a "Wealth Starter Sub-Lease Agreement," in which Hanbo Li subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Hanbo Li was provided a Certificate of Ownership, dated February 3, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Hanbo Li has not received the guaranteed payment.

79.     On or about February 3, 2016, Meng Yu invested three (3) units at Bar Works' 41 West 46th Street location (unit numbers: 7601, 8078, 7784) and paid the purchase price of $75,000.  BWI and Meng Yu entered into a "Wealth Accelerator Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Meng Yu signed a "Wealth Accelerator Sub-Lease Agreement," in which Meng Yu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $969 per month. Meng Yu was provided a Certificate of Ownership, dated February 3, 2016, signed by Black as Chief Executive of BWI.  She also received a welcome letter from Tahyira Cordner from Bar Works Inc Operations, dated February 3, 2016, confirming her purchase of the Bar Works securities.  As of March 2017, Meng Yu has not received the guaranteed payment.

80.     On or about February 3, 2016, Zhijian Liu invested two (2) units at Bar Works' 41 West 46th Street location (unit numbers: 7964, 9127) and paid the purchase price of $50,000. BWI and Zhijian Liu entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Zhijian Liu signed a "Wealth Starter Sub-Lease Agreement," in which Zhijian Liu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Zhijian Liu paid the purchase price via a wire transfer to BWI's JPMorgan Chase account.  He was provided a Certificate of Ownership, dated February 3, 2016, signed by Black as Chief Executive of BWI. He also received a letter from Black on behalf of Bar Works Inc Operations, dated February 3, 2016, acknowledging that Bar Works received the purchase price from him.[4]  As of March 2017, Zhijian Liu has not received the guaranteed payment.

81.     On or about February 17, 2016, Weiwei Li invested four (4) units at Bar Works' 41 West 46th Street location (unit numbers: 6900, 7445, 7343, 9015) and paid the purchase price of $100,000.  BWI and Weiwei Li entered into a "Wealth Accelerator Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Weiwei Li signed a "Wealth Accelerator Sub-Lease Agreement," in which Weiwei Li subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,292 per month.  Weiwei Li paid the purchase price on February 17, 2016 via a wire transfer to BWI's JPMorgan Chase account.  She was provided a Certificate of Ownership, dated February 17, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Black on behalf of Bar Works Inc Operations, dated February 17, 2016, acknowledging that Bar Works

---

[4] This letter (and other similar letters) only contains a signature appears to be from Black and does not contain the name of the author.

received the purchase price from her.  As of March 2017, Weiwei Li has not received the guaranteed payment.

82.     On or about July 11, 2016, Weiwei Li invested three (3) units at Bar Works' 615 Sacramento Street location (unit numbers: 8025, 9472, 7010) and paid the purchase price of $90,000.  Bar Works San Francisco and Weiwei Li entered into a "San Francisco Lease Agreement."  The Lease term is 99 years.  On the same date, Bar Works Management and Weiwei Li signed a "San Francisco Sub-Lease Agreement," in which Weiwei Li subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $937.50 per month.  Weiwei Li paid the purchase price on July 11, 2016 via a wire transfer to BWI's JPMorgan Chase account.  She was provided a Certificate of Ownership, dated July 11, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated July 11 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Weiwei Li has not received the guaranteed payment.

83.     On or about February 18, 2016, Zhaojun Gui invested two (2) units at Bar Works' 41 West 46th Street location (unit numbers: 8436, 9553) and paid the purchase price of $50,000. BWI and Zhaojun Gui entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Zhaojun Gui signed a "Wealth Starter Sub-Lease Agreement," in which Zhaojun Gui subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. Zhaojun Gui was provided a Certificate of Ownership, dated February 18, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc

Operations, dated February 18, 2016, acknowledging her investment in Bar Works securities.  As of March 2017, Zhaojun Gui has not received the guaranteed payment.

84.     On or about June 2, 2016, Zhongyun Mao invested two (2) units at Bar Works' 70 White Street location (unit numbers: 7044, 8377) and paid the purchase price of $50,000.  Bar Works Tribeca and Zhongyun Mao entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Zhongyun Mao signed a "Wealth Starter Sub-Lease Agreement," in which Zhongyun Mao subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Mao was provided a Certificate of Ownership, dated June 2, 2016, signed by Black as Chief Executive of BWI.  He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated June 2, 2016, acknowledging that Bar Works received the purchase price from him.  As of March 2017, Zhongyun Mao has not received the guaranteed payment.

85.     On or about November 3, 2016, Zhongyun Mao invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 7096, 7311) and paid the purchase price of $50,000.   Bar Works Chambers and Zhongyun Mao entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Zhongyun Mao signed a "Wealth Starter Sub-Lease Agreement," in which Zhongyun Mao subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Mao was provided a Certificate of Ownership, dated October 24, 2016, signed by Black as Chief Executive of BWI.  He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated November 14, 2016, acknowledging that Bar Works received the purchase price from him.  As of March 2017, Zhongyun Mao has not received the guaranteed payment.

86.     On or about February 19, 2016, Zhongyun Mao invested two (2) units at Bar Works' 41 West 46th Street location (unit numbers: 7159, 8009) and paid the purchase price of $50,000.  BWI and Zhongyun Mao entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Zhongyun Mao signed a "Wealth Starter Sub-Lease Agreement," in which Zhongyun Mao subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Zhongyun Mao paid the purchase price via a wire transfer on February 22, 2016 to BWI's JPMorgan Chase account.  He was provided a Certificate of Ownership, dated February 19, 2016, signed by Black as Chief Executive of BWI.  He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated February 19, 2016, acknowledging that Bar Works received the purchase price from him.  As of March 2017, Zhongyun Mao has not received the guaranteed payment.

87.     On or about February 24, 2016, Qian Li invested two (2) units at Bar Works' 41 West 46th Street location (unit numbers: 9824, 8682) and paid the purchase price of $50,000.  BWI and Qian Li entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Qian Li signed a "Wealth Starter Sub-Lease Agreement," in which Qian Li subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  She was provided a Certificate of Ownership, dated February 24, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated February 24, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Qian Li has not received the guaranteed payment.

88.     On or about March 2, 2016, Xuemei Wang invested two (2) units at Bar Works' 47 7th Avenue South location (unit numbers: 6976, 8469) and paid the purchase price of $50,000. Bar Worsk 7th Avenue and Xuemei Wang entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Xuemei Wang signed a "Wealth Starter Sub-Lease Agreement," in which Xuemei Wang subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. She received a letter from Black on behalf of Bar Works Inc Operations, dated March 2, 2016, acknowledging that Bar Works received the purchase price from her. As of March 2017, Xuemei Wang has not received the guaranteed payment.

89.     On or about March 1, 2016, Wen Xia invested two (2) units at Bar Works' 41 West 46th Street location (unit numbers: 8331, 8171) and paid the purchase price of $50,000. BWI and Wen Xia entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Wen Xia signed a "Wealth Starter Sub-Lease Agreement," in which Wen Xia subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. She was provided a Certificate of Ownership, dated March 1, 2016, signed by Black as Chief Executive of BWI. She also received a letter from Black on behalf of Bar Works Inc Operations, dated March 1, 2016, acknowledging that Bar Works received the purchase price from her. As of March 2017, Wen Xia has not received the guaranteed payment.

90.     On or about March 23, 2016, Wei Gao invested two (2) units at Bar Works' 47 7th Avenue South location (unit numbers: 8640, 7092) and paid the purchase price of $50,000. Bar Worsk 7th Avenue and Wei Gao entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Wei Gao signed a "Wealth

Starter Sub-Lease Agreement," in which Wei Gao subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. He was provided a Certificate of Ownership, dated March 23, 2016, signed by Black as Chief Executive of BWI. He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated March 23, 2016, acknowledging that Bar Works received the purchase price from him. As of March 2017, Wei Gao has not received the guaranteed payment.

91.     On or about March 17, 2016, Lei Chen invested two (2) units at Bar Works' 47 7th Avenue South location (unit numbers: 9599, 8198) and paid the purchase price of $50,000. Bar Works 7th Avenue and Lei Chen entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Lei Chen signed a "Wealth Starter Sub-Lease Agreement," in which Lei Chen subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. Lei Chen sent the purchase price to Bar Works 7th Avenue's JPMorgan Chase account on March 10, 2016. Lei Chen was provided a Certificate of Ownership, dated March 17, 2016, signed by Black as Chief Executive of BWI. She also received a letter from Black on behalf of Bar Works Inc Operations, dated March 17, 2016, acknowledging that Bar Works received the purchase price from her. As of March 2017, Lei Chen has not received the guaranteed payment.

92.     On or about September 6, 2016, Lei Chen invested two (2) units at Bar Works' 70 White Street location (unit numbers: 7880, 7724) and paid the purchase price of $50,000. Bar Works Tribeca and Lei Chen entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Lei Chen signed a "Wealth Starter Sub-Lease Agreement," in which Lei Chen subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. Lei Chen sent

the purchase price to BWI's JPMorgan Chase account on August 29, 2016.  Lei Chen was provided a Certificate of Ownership, dated September 6, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated October 18, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Lei Chen has not received the guaranteed payment.

93.    On or about April 22, 2016, Yali Fu invested twenty (20) units at Bar Works' 70 White Street location (unit numbers: 9905, 7281, 8572, 9430, 7541, 9027, 9428, 7844, 8375, 7211, 8592, 7169, 7535, 7584, 7297, 9792, 8961, 7055, 8348, 7749) and paid the purchase price of $500,000.  Bar Works Tribeca and Yali Fu entered into a "Wealth Builder Lease Agreement." The Lease term is ten years.  On the same date, Bar Works Management and Yali Fu signed a "Wealth Builder Sub-Lease Agreement," in which Yali Fu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $6,667 per month.  Yali Fu sent the purchase price to BWI's JPMorgan Chase account via several wire transfers.  As of March 2017, Yali Fu has not received the guaranteed payment.

94.    On or about April 13, 2016, Yi Yuan invested four (4) units at Bar Works' 47 7th Avenue South location (unit numbers: 8932, 9086, 9233, 8938) and paid the purchase price of $100,000.   Bar Works 7th Avenue and Yi Yuan entered into a "Wealth Accelerator Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Yi Yuan signed a "Wealth Accelerator Sub-Lease Agreement," in which Yi Yuan subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,292 per month.  Yi Yuan sent the purchase price to BWI's JPMorgan Chase account via two wire transfers on April 11 and April 12, 2016.  Yi Yuan was provided a Certificate of Ownership, dated April 13, 2016, signed by Black as Chief Executive of BWI.  She

also received a letter from Black on behalf of Bar Works Inc Operations, dated April 13, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Yi Yuan has not received the guaranteed payment.

95.     On or about April 12, 2016, Xiaolei Shen invested two (2) units at Bar Works' 47 7th Avenue South location (unit numbers: 6887, 8466) and paid the purchase price of $50,000. Bar Works 7th Avenue and Xiaolei Shen entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Xiaolei Shen signed a "Wealth Starter Sub-Lease Agreement," in which Xiaolei Shen subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Xiaolei Shen sent the purchase price to Bar Works 7th Avenue's JPMorgan Chase account via two wire transfers on April 12, 2016.  She was provided a Certificate of Ownership, dated April 12, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Xiaolei Shen has not received the guaranteed payment.

96.     On or about April 21, 2016, Qing Wan invested two (2) units at Bar Works' 47 7th Avenue South location (unit numbers: 7911, 8389) and paid the purchase price of $50,000.  Bar Works 7th Avenue and Qing Wan entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Qing Wang signed a "Wealth Starter Sub-Lease Agreement," in which Qing Wan subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Qing Wan was provided a Certificate of Ownership, dated April 21, 2016, signed by Black as Chief Executive of BWI.  Qing Wan also received a letter from Black on behalf of Bar Works Inc Operations, dated April 21, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Qing Wan has not received the guaranteed payment.

97.     On or about April 28, 2016, Dongmei Ni invested four (4) units at Bar Works' 47 7th Avenue South location (unit numbers: 8079, 9904, 8644, 8577) and paid the purchase price of $100,000.  Bar Works 7th Avenue and Dongmei Ni entered into a "Wealth Accelerator Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Dongmei Ni signed a "Wealth Accelerator Sub-Lease Agreement," in which Dongmei Ni subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,292 per month.  Dongmei Ni sent the purchase price to BWI's JPMorgan Chase account via two wire transfers on or around April 28, 2016.  Dongmei Ni was provided a Certificate of Ownership, dated April 28, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated April 28, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Dongmei Ni has not received the guaranteed payment.

98.     On or about April 27, 2016, Bin Xu invested two (2) units at Bar Works' 47 7th Avenue South location (unit numbers: 8379, 8626) and paid the purchase price of $50,000.  Bar Works 7th Avenue and Bin Xu entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Bin Xu signed a "Wealth Starter Sub-Lease Agreement," in which Bin Xu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Bin Xu was provided a Certificate of Ownership, dated April 27, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Bin Xu has not received the guaranteed payment.

99.     On or about May 5, 2016, Ying Ni invested three (3) units at Bar Works' 47 7th Avenue South location (unit numbers: 7123,8836,8888) and paid the purchase price of $75,000. Bar Works 7th Avenue and Ying Ni entered into a "Wealth Accelerator Lease Agreement."  The

Lease term is ten years.  On the same date, Bar Works Management and Ying Ni signed a "Wealth Accelerator Sub-Lease Agreement," in which Ying Ni subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $969 per month.  She sent the purchase price to BWI's JPMorgan Chase account via two wire transfers, with the first one on April 29, 2016 for the amount of $40,000 and the second one on May 5, 2016 for the amount of $35,000.  Ying Ni was provided a Certificate of Ownership, dated May 5, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Black on behalf of Bar Works Inc Operations, dated May 5, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Ying Ni has not received the guaranteed payment.

100.    On or about May 6, 2016, Liancheng Chen invested two (2) units at Bar Works' 47 7th Avenue South location (unit numbers: 7531, 8028) and paid the purchase price of $50,000. Bar Works 7th Avenue and Liancheng Chen entered into a "Wealth Starter Lease Agreement." The Lease term is ten years.  On the same date, Bar Works Management and Liancheng Chen signed a "Wealth Starter Sub-Lease Agreement," in which Liancheng Chen subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  He sent the purchase price to BWI's JPMorgan Chase account via a wire transfer on May 4, 2016.  He was provided a Certificate of Ownership, dated May 6, 2016, signed by Black as Chief Executive of BWI.  He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated May 6, 2016, acknowledging that Bar Works received the purchase price from him.  As of March 2017, Liancheng Chen has not received the guaranteed payment.

101.    On or about July 27, 2016, Liancheng Chen invested two (2) units at Bar Works' 615 Sacramento Street location (unit numbers: 8599, 8495) and paid the purchase price of $60,000.   Bar Works Capital and Liancheng Chen entered into a "San Francisco Lease Agreement."   The Lease term is 99 years.   On the same date, Bar Works Management and Liancheng Chen signed a "San Francisco Sub-Lease Agreement," in which Liancheng Chen subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.   He was provided a Certificate of Ownership, dated July 27, 2016, signed by Black as Chief Executive of BWI.   He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated July 27, 2016, acknowledging that Bar Works received the purchase price from him.   As of March 2017, Liancheng Chen has not received the guaranteed payment.

102.    On or about September 30, 2016, Meng Yu invested three (3) units at Bar Works' 95 Chambers Street location (unit numbers: 8798, 9860, 8879) and paid the purchase price of $75,000.   Bar Works Chambers and Meng Yu entered into a "Wealth Accelerator Lease Agreement."   The Lease term is ten years.   On the same date, Bar Works Management and Meng Yu signed a "Wealth Accelerator Sub-Lease Agreement," in which Yu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $969 per month.   Meng Yu paid the purchase price via a wire transfer to BWI's JPMorgan Chase account.   She was provided a Certificate of Ownership dated September 30, 2016, signed by Black as Chief Executive of BWI.   She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated September 30, 2016, acknowledging that Bar Works received the purchase price from her.   As of March 2017, Meng Yu has not received the guaranteed payment.

103.    On or about October 24, 2016, Zhijian Liu invested two (2) units at Bar Works'
95 Chambers Street location (unit numbers: 9460, 8809) and paid the purchase price of $50,000.
Bar Works Chambers and Zhijian Liu entered into a "Wealth Starter Lease Agreement."  The
Lease term is ten years.  On the same date, Bar Works Management and Zhijiang Liu signed a
"Wealth Starter Sub-Lease Agreement," in which Zhijian Liu subleased the purchased
workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625
per month.  Zhijian Liu paid the purchase price via a wire transfer to BWI's JPMorgan Chase
account.  He was provided a Certificate of Ownership dated October 24, 2016, signed by Black
as Chief Executive of BWI.  As of March 2017, Zhijian Liu has not received the guaranteed
payment.

104.    On or about October 11, 2016, Min Su invested two (2) units at Bar Works' 95
Chambers Street location (unit numbers: 7563, 7726) and paid the purchase price of $50,000.
Bar Works Chambers and Min Su entered into a "Wealth Starter Lease Agreement."  The Lease
term is ten years.  On the same date, Bar Works Management and Min Su signed a "Wealth
Starter Sub-Lease Agreement," in which Min Su subleased the purchased workspaces to Bar
Works Management in exchange for guaranteed profits in the amount of $625 per month.  He
received a letter from Tahyira Cordner from Bar Works Inc Operations, dated October 11, 2016,
acknowledging that Bar Works received the purchase price from him.  As of March 2017, Min
Su has not received the guaranteed payment.

105.    On or about March 1, 2016, Min Su invested two (2) units at Bar Works' 41 West
46th Street location (unit numbers: 8422, 7062) and paid the purchase price of $50,000.  BWI and
Min Su entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the
same  date,  Bar  Works  Management  and  Min  Su  signed  a  "Wealth  Starter  Sub-Lease

Agreement," in which Min Su subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. He was provided a Certificate of Ownership dated March 1, 2016, signed by Black as Chief Executive of BWI. He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated March 1, 2016, acknowledging that he purchased Bar Works securities. As of March 2017, Min Su has not received the guaranteed payment.

106.    On or about May 4, 2016, Min Su invested two (2) units at Bar Works' 47 7th Avenue South location (unit numbers: 9343, 8766) and paid the purchase price of $50,000. Bar Works 7th Avenue and Min Su entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Min Su signed a "Wealth Starter Sub-Lease Agreement," in which Min Su subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. He sent the purchase price via a wire transfer to BWI's JPMorgan Chase account on or around May 3, 2016. He was provided a Certificate of Ownership dated May 4, 2016, signed by Black as Chief Executive of BWI. He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated May 4, 2016, acknowledging that Bar Works received the purchase price from him. As of March 2017, Min Su has not received the guaranteed payment.

107.    On or about October 12, 2016, Liangzi Su invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 8366, 7509) and paid the purchase price of $50,000. Bar Works Chambers and Liangzi Su entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Liangzi Su signed a "Wealth Starter Sub-Lease Agreement," in which Liangzi Su subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625

per month.  He was provided a Certificate of Ownership dated October 12, 2016, signed by Black as Chief Executive of BWI.  He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated October 12, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Su has not received the guaranteed payment.

108.    On or about October 12, 2016, Yu Fang invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 9135, 9150) and paid the purchase price of $50,000. Bar Works Chambers and Yu Fang entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Yu Fang signed a "Wealth Starter Sub-Lease Agreement," in which Yu Fang subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  As of March 2017, Yu Fang has not received the guaranteed payment.

109.    On or about November 18, 2016, Yidong Pan invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 9741, 8029) and paid the purchase price of $50,000.  Bar Works Chambers and Yidong Pan entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Yidong Pan signed a "Wealth Starter Sub-Lease Agreement," in which Yidong Pan subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  He was provided a Certificate of Ownership dated November 18, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Yidong Pan has not received the guaranteed payment.

110.    On or about November 1, 2016, Kechun Cao invested one (1) unit at Bar Works' 95 Chambers Street location (unit numbers: 9712) and paid the purchase price of $25,000.  Bar Works Chambers and Kechun Cao entered into a "Wealth Starter Lease Agreement."  The Lease

term is ten years.  On the same date, Bar Works Management and Kechun Cao signed a "Wealth Starter Sub-Lease Agreement," in which Kechun Cao subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $292 per month.  He was provided a Certificate of Ownership dated November 1, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Kechun Cao has not received the guaranteed payment.

111.    On or about October 4, 2016, Mei'e You invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 9451, 6988) and paid the purchase price of $50,000. Bar Works Chambers and Mei'e You entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Mei'e You signed a "Wealth Starter Sub-Lease Agreement," in which she subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  She was provided a Certificate of Ownership dated November 18, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, she has not received the guaranteed payment.

112.    On or about October 31, 2016, Haiying Huang invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 7883, 6925) and paid the purchase price of $50,000.   Bar Works Chambers and Haiying Huang entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Haiying Huang signed a "Wealth Starter Sub-Lease Agreement," in which Haiying Huang subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  She paid the purchase price to BWI's JPMorgan Chase account via a wire transfer on October 28, 2016.  She was provided a Certificate of Ownership dated October 31, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated October 31, 2016, acknowledging

that Bar Works received the purchase price from her.  As of March 2017, Haiyig Huang has not received the guaranteed payment.

113.    On or about November 1, 2016, Ziling Rao invested five (5) units at Bar Works' 95 Chambers Street location (unit numbers: 7384, 8876, 7406, 8164, 7249) and paid the purchase price of $125,000.  Bar Works Chambers and Ziling Rao entered into a "Wealth Builder Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Ziling Rao signed a "Wealth Builder Sub-Lease Agreement," in which Ziling Rao subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,667 per month.  She paid the purchase price to BWI's JPMorgan Chase account via two wire transfers on October 21 and October 25, 2016.  She was provided a Certificate of Ownership dated November 1, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Ziling Rao has not received the guaranteed payment.

114.    On or about May 31, 2016, Yinsi Yu invested two (2) units at Bar Works' 70 White Street location (unit numbers: 8089, 8585) and paid the purchase price of $50,000.  Bar Works Tribeca and Yinsi Yu entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Yinsi Yu signed a "Wealth Starter Sub-Lease Agreement," in which Yinsi Yu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Yu paid the purchase price to BWI's JPMorgan Chase account via two wire transfers.  She was provided a Certificate of Ownership dated May 20, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated May 31, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Yinsi Yu has not received the guaranteed payment.

115.    On or about May 20, 2016, Di Wu invested two (2) units at Bar Works' 70 White Street location (unit numbers: 8257, 7077) and paid the purchase price of $50,000.  Di Wu received a "Wealth Starter Lease Agreement" from Bar Works Tribeca.  The Lease term is ten years.   Di Wu also received a "Wealth Starter Sub-Lease Agreement" from Bar Works Management, in which Di Wu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Di Wu paid the purchase price to Bar Works Tribeca's JPMorgan Chase account via a wire transfer on May 19, 2016.  Di Wu was provided a Certificate of Ownership dated May 20, 2016, signed by Black as Chief Executive of BWI.  Wu also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated May 31, 2016, acknowledging that Bar Works received the purchase price from Wu.  As of March 2017, Di Wu has not received the guaranteed payment.

116.    On or about May 20, 2016, Liangzi Su invested two (2) units at Bar Works' 70 White Street location (unit numbers: 8024, 8840) and paid the purchase price of $50,000.  Bar Works Tribeca and Su entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Su signed a "Wealth Starter Sub-Lease Agreement," in which Su subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.   Su received a letter from Tahyira Cordner from Bar Works Inc Operations, dated May 20, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Liangzi Su has not received the guaranteed payment.

117.    On or about May 31, 2016, Yu Fang invested three (3) units at Bar Works' 70 White Street location (unit numbers: 8720, 8491, 9334) and paid the purchase price of $75,000. Bar Works Tribeca and Yu Fang entered into a "Wealth Accelerator Lease Agreement."  The

Lease term is ten years. On the same date, Bar Works Management and Yu Fang signed a "Wealth Accelerator Sub-Lease Agreement," in which Yu Fang subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $969 per month. She was provided a Certificate of Ownership dated May 31, 2016, signed by Black as Chief Executive of BWI. As of March 2017, Yu Fang has not received the guaranteed payment.

118. On or about September 6, 2016, Yu Fang invested two (2) units at Bar Works' 615 Sacramento Street location (unit numbers: 9770, 9192) and paid the purchase price of $60,000. She received a "San Francisco Lease Agreement" with the counterparty as Bar Works Capital. The Lease term is 99 years. She also received a "San Francisco Sub-Lease Agreement" with the counterparty as Bar Works Management, in which Yu Fang subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.[5] She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated September 6, 2016, acknowledging that Bar Works received the purchase price from her. As of March 2017, Yu Fang has not received the guaranteed payment.

119. On or about May 25, 2016, Linlin Sun invested two (2) units at Bar Works' 70 White Street location (unit numbers: 8764, 9704) and paid the purchase price of $50,000. She received a "Wealth Starter Lease Agreement" with the counterparty as Bar Works Tribeca. The Lease term is ten years. She also received a "Wealth Starter Sub-Lease Agreement" with the counterparty as Bar Works Management, in which she subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.[6] Sun sent the purchase price via two wire transfers on or around May 24, 2016 to Bar Works

[5] Both the Lease Agreement and the Sub-Lease Agreement are not signed by the parties.
[6] Both the Lease Agreement and the Sub-Lease Agreement are not signed by the parties.

Tribeca's JPMorgan Chase account.  She was provided a Certificate of Ownership dated May 25, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated May 25, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Linlin Sun has not received the guaranteed payment.

120.    On or about August 29, 2016, Yuhan Yang invested four (4) units at Bar Works' 70 White Street location (unit numbers: 8432, 7314, 9304, 9641) and paid the purchase price of $100,000.  Bar Works Tribeca and Yuhan Yang entered into a "Wealth Accelerator Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Yuhan Yang signed a "Wealth Accelerator Sub-Lease Agreement," in which Yuhan Yang subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,292 per month.  Yang was provided a Certificate of Ownership dated August 29, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Yuhan Yang has not received the guaranteed payment.

121.    On or about June 7, 2016, Yuechun Zhang invested two (2) units at Bar Works' 70 White Street location (unit numbers: 7369, 8990) and paid the purchase price of $50,000.  Bar Works Tribeca and Yuechun Zhang entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Yuechun Zhang signed a "Wealth Starter Sub-Lease Agreement," in which Yuechun Zhang subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  In addition, she was provided a Certificate of Ownership dated June 7, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Yuechun Zhang has not received the guaranteed payment.

122.     On or about June 22, 2016, Cui Li invested four (4) units at Bar Works' 70 White Street location (unit numbers: 9348, 7558, 8275, 9356) and paid the purchase price of $100,000. Bar Works Tribeca and Cui Li entered into a "Wealth Accelerator Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Cui Li signed a "Wealth Accelerator Sub-Lease Agreement," in which Cui Li subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,292 per month.  Li paid the purchase price via two wire transfers to BWI's JPMorgan Chase account.  Li was provided a Certificate of Ownership dated June 22, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Cui Li has not received the guaranteed payment.

123.     On or about July 1, 2016, Jiaxi Qi invested two (2) units at Bar Works' 615 Sacramento Street location (unit numbers: 7283, 7813) and paid the purchase price of $60,000. Bar Works Capital and Jiaxi Qi entered into a "San Francisco Lease Agreement."  The Lease term is 99 years.  On the same date, Bar Works Management and Qi signed a "San Francisco Sub-Lease Agreement," in which she subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  She was provided a Certificate of Ownership dated July 1, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated September 14, 2016, acknowledging that she purchased the Bar Works securities.  As of March 2017, Jiaxi Qi has not received the guaranteed payment.

124.     On or about June 20, 2016, Yidong Pan invested two (2) units at Bar Works' 70 White Street location (unit numbers: 9592, 7031) and paid the purchase price of $50,000.  Bar Works Tribeca and Pan entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Pan signed a "Wealth Starter Sub-Lease

Agreement," in which Pan subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Pan paid the purchase price via a wire transfer to BWI's JPMorgan Chase account on or about June 29, 2016.  He was provided a Certificate of Ownership dated June 20, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Pan has not received the guaranteed payment.

125.    On or about August 2, 2016, Yan Xie invested five (5) units at Bar Works' 70 White Street location (unit numbers: 7409, 7070, 8796, 7219, 7132) and paid the purchase price of $125,000.  Bar Works Tribeca and Xie entered into a "Wealth Builder Lease Agreement." The Lease term is ten years.  On the same date, Bar Works Management and Xie signed a "Wealth Builder Sub-Lease Agreement," in which Xie subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,667 per month. Xie was provided a Certificate of Ownership dated August 2, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Xie has not received the guaranteed payment.

126.    On or about August 26, 2016, Kechun Cao invested two (2) units at Bar Works' 70 White Street location (unit numbers: 7696, 8744) and paid the purchase price of $50,000.  Bar Works Tribeca and Cao entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Cao signed a "Wealth Starter Sub-Lease Agreement," in which Cao subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.   Cao was provided a Certificate of Ownership dated August 26, 2016, signed by Black as Chief Executive of BWI. As of March 2017, Cao has not received the guaranteed payment.

127.    On or about August 31, 2016, Tingting Zheng invested two (2) units at Bar Works' 70 White Street location (unit numbers: 9493, 7730) and paid the purchase price of

$50,000.  She received a "Wealth Starter Lease Agreement" with the counterparty as Bar Works Tribeca.  The Lease term is ten years.  She also received a "Wealth Starter Sub-Lease Agreement" with the counterparty as Bar Works Management, in which she subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.[7]  Zheng sent the purchase price via a wire transfer to Bar Works Tribeca's JPMorgan Chase account on or around August 30, 2016.  She received a letter from Tahyira Cordner from Bar Works Inc Operations, dated August 31, 2016, acknowledging that she purchased the Bar Works securities.  As of March 2017, Zheng has not received the guaranteed payment.

128.    On or about August 29, 2016, Juan Chu invested two (2) units at Bar Works' 70 White Street location (unit numbers: 8747, 7839) and paid the purchase price of $50,000.  She received a "Wealth Starter Lease Agreement" with the counterparty as Bar Works Tribeca.  The Lease term is ten years.  She also received a "Wealth Starter Sub-Lease Agreement" with the counterparty as Bar Works Management, in which she subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.[8] Chu sent the purchase price via a wire transfer to BWI's JPMorgan Chase account on or around August 29, 2016.  She received a letter from Tahyira Cordner from Bar Works Inc Operations, dated August 29, 2016, acknowledging that she purchased the Bar Works securities.  As of March 2017, Chu has not received the guaranteed payment.

129.    On or about October 11, 2016, Hui Dong invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 6921, 7435) and paid the purchase price of $50,000.

---

[7] Zheng signed the Lease Agreement and the Sub-Lease Agreement.  However, Bar Works did not sign these two documents.
[8] Zheng signed the Lease Agreement and the Sub-Lease Agreement.  However, Bar Works did not sign these two documents.

Bar Works Chambers and Hui Dong entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Dong signed a "Wealth Starter Sub-Lease Agreement," in which Dong subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. She was provided a Certificate of Ownership dated October 11, 2016, signed by Black as Chief Executive of BWI. As of March 2017, she has not received the guaranteed payment.

130.    On or about September 30, 2016, Xiuqiao Sun invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 8607, 7538) and paid the purchase price of $50,000. Bar Works Chambers and Sun entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Sun signed a "Wealth Starter Sub-Lease Agreement," in which Sun subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. She was provided a Certificate of Ownership dated September 30, 2016, signed by Black as Chief Executive of BWI. As of March 2017, she has not received the guaranteed payment.

131.    On or about August 31, 2016, Xuelian Zhang invested two (2) units at Bar Works' 70 White Street location (unit numbers: 9005, 8124) and paid the purchase price of $50,000. Bar Works Tribeca and Zhang entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Zhang signed a "Wealth Starter Sub-Lease Agreement," in which she subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. Zhang sent the purchase price via a wire transfer to BWI's JPMorgan Chase account on or around August 31, 2016. She was provided a Certificate of Ownership dated August 31, 2016, signed by Black as Chief Executive of BWI. As of March 2017, she has not received the guaranteed payment.

132.    On or about October 12, 2016, Yonggang Chen invested twenty (20) units at Bar Works' 95 Chambers Street location (unit numbers: 9229, 8862, 9886, 9895, 7141, 9607, 7307, 9024, 7484, 7060, 8688, 8212, 8697, 7341, 7867, 8706, 7870, 6955, 9951, 9919) and paid the purchase price of $500,000.   Bar Works Chambers and Chen entered into a "Wealth Builder Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Chen signed a "Wealth Builder Sub-Lease Agreement," in which he subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $6,666 per month.   Chen was provided a Certificate of Ownership dated October 12, 2016, signed by Black as Chief Executive of BWI.  He also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated October 12, 2016, acknowledging that Bar Works received the purchase price from him.  As of March 2017, Chen has not received the guaranteed payment.

133.    On or about April 2, 2016, Lingyun Xu invested two (2) units at Bar Works' 47 7th Avenue South location (unit numbers: 8689, 8995) and paid the purchase price of $50,000. Bar Works 7th Avenue and Lingyun Xu entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Lingyun Xu signed a "Wealth Starter Sub-Lease Agreement," in which Xu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.   Xu was provided a Certificate of Ownership, dated April 21, 2016, signed by Black as Chief Executive of BWI.  He also received a welcome letter from Tahyira Cordner from Bar Works Inc Operations, dated April 25, 2016, acknowledging his investment in Bar Works securities.   As of March 2017, Lingyun Xu has not received the guaranteed payment.

134.    On or about May 26, 2016, Meizhen Li invested five (5) units at Bar Works' 70 White Street location (unit numbers: 9787, 6892, 7121, 9975, 9517) and paid the purchase price of $125,000.  Bar Works Tribeca and Li entered into a "Wealth Builder Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Li signed a "Wealth Starter Sub-Lease Agreement," in which she subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,667 per month.  Li was provided a Certificate of Ownership, dated May 26, 2016, signed by Black as Chief Executive of BWI.  On or about August 12, 2016, Li made additional purchase of two more units at the 70 White Street location.  Although she did not enter into an contract with Bar Works regarding these two units, she received a letter from Tahyira Cordner from Bar Works Inc Operations, dated August 12, 2016, acknowledging that Bar Works received the purchase price of $50,000 for the additional two units from her.  As of March 2017, Li has not received the guaranteed payment.

135.    On or about September 2, 2016, Weian Gu invested three (3) units at Bar Works' 70 White Street location (unit numbers: 9834, 8474, 6990) and paid the purchase price of $75,000.  Bar Works Tribeca and Gu entered into a "Wealth Accelerator Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Gu signed a "Wealth Accelerator Sub-Lease Agreement," in which Gu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $929 per month.  Gu was provided a Certificate of Ownership, dated September 2, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Gu has not received the guaranteed payment.

136.    On or about September 2, 2016, Weian Gu invested two (2) units at Bar Works' 615 Sacramento Street location (unit numbers: 9668, 6994) and paid the purchase price of

$60,000.  Bar Works Capital and Gu entered into a "San Francisco Lease Agreement."  The Lease term is 99 years.  On the same date, Bar Works Management and Gu signed a "San Francisco Sub-Lease Agreement," in which Gu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Gu was provided a Certificate of Ownership, dated September 2, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Gu has not received the guaranteed payment.

137.   On or about September 27, 2016, Fang Liu invested two (2) units at Bar Works' 615 Sacramento Street location (unit numbers: 7066, 9815) and paid the purchase price of $60,000.  Bar Works Capital and Liu entered into a "San Francisco Lease Agreement."  The Lease term is 99 years.  On the same date, Bar Works Management and Liu signed a "San Francisco Sub-Lease Agreement," in which she subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Liu was provided a Certificate of Ownership dated September 27, 2016, signed by Black as Chief Executive of BWI.  She also received a letter from Tahyira Cordner from Bar Works Inc Operations, dated September 27, 2016, acknowledging that she purchased the Bar Works securities.  As of March 2017, Fang Liu has not received the guaranteed payment.

138.   On or about May 20, 2016, Shih-Chun Shan invested two (2) units at Bar Works' 70 White Street location (unit numbers: 9573, 9694) and paid the purchase price of $50,000.  Shan received a "Wealth Starter Lease Agreement" with the counterparty as Bar Works Tribeca.  The Lease term is ten years.  He also received a "Wealth Starter Sub-Lease Agreement" with the counterparty as Bar Works Management, in which he subleased the purchased workspaces to Bar

Works Management in exchange for guaranteed profits in the amount of $625 per month.[9]  As of March 2017, Shan has not received the guaranteed payment.

139.   On or about August 22, 2016, Chin-Kuang Peng invested five (5) units at Bar Works' 70 White Street location (unit numbers: 9139, 7479, 7602, 8032, 9764) and paid the purchase price of $125,000.   Peng received a "Wealth Builder Lease Agreement" with the counterparty as Bar Works Tribeca.  The Lease term is ten years.  He also received a "Wealth Starter Sub-Lease Agreement" with the counterparty as Bar Works Management, in which he subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,667 per month.[10]  Peng received a letter from Tahyira Cordner from Bar Works Inc Operations, dated August 22, 2016, acknowledging that Bar Works received the purchase price from him.  As of March 2017, Peng has not received the guaranteed payment.

140.   On or about October 3, 2016, Min Hao invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 7130, 7791) and paid the purchase price of $50,000.  Bar Works Chambers and Min Hao entered into a "Wealth Starter Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Min Hao signed a "Wealth Starter Sub-Lease Agreement," in which Hao subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Hao sent the purchase price via a wire transfer to BWI's JPMorgan Chase account on October 3, 2016.  He received a letter from Tahyira Cordner from Bar Works Inc Operations, dated October 3, 2016, acknowledging that Bar Works received the purchase price from him.  As of March 2017, he has not received the guaranteed payment.

---

[9] Shan signed the Lease Agreement and the Sub-Lease Agreement.  However, Bar Works did not sign these two documents.

[10] Shan signed the Lease Agreement and the Sub-Lease Agreement.  However, Bar Works did not sign these two documents.

141.    On or about October 10, 2016, Yuechao Li invested two (2) units at Bar Works' 95 Chambers Street location (unit numbers: 8058, 8248) and paid the purchase price of $50,000. Bar Works Chambers and Li entered into a "Wealth Starter Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Li signed a "Wealth Starter Sub-Lease Agreement," in which Li subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month. Li sent the purchase price via a wire transfer to BWI's JPMorgan Chase account on October 10, 2016. She received a letter from Tahyira Cordner from Bar Works Inc Operations, dated October 11, 2016, acknowledging that Bar Works received the purchase price from her. As of March 2017, she has not received the guaranteed payment.

142.    On or about October 13, 2016, Xiang Yu invested four (4) units at Bar Works' 95 Chambers Street location (unit numbers: 8635, 6922, 8830, 9760) and paid the purchase price of $100,000. Bar Works Chambers and Yu entered into a "Wealth Accelerator Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Yu signed a "Wealth Accelerator Sub-Lease Agreement," in which he subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $1,292 per month. Yu was provided a Certificate of Ownership dated October 13, 2016, signed by Black as Chief Executive of BWI. As of March 2017, Xiang Yu has not received the guaranteed payment.

143.    On or about September 1, 2016, Xiang Yu invested three (3) units at Bar Works' 70 White Street location (unit numbers: 9361, 8045, 7712) and paid the purchase price of $75,000. Bar Works Tribeca and Yu entered into a "Wealth Accelerator Lease Agreement." The Lease term is ten years. On the same date, Bar Works Management and Yu signed a "Wealth Accelerator Sub-Lease Agreement," in which he subleased the purchased workspaces to Bar

Works Management in exchange for guaranteed profits in the amount of $969 per month.  Yu was provided a Certificate of Ownership dated September 1, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Xiang Yu has not received the guaranteed payment.

144.    On or about June 22, 2016, Bowen Zhang invested two (2) units at Bar Works' 70 White Street location (unit numbers: 8231, 6885) and paid the purchase price of $50,000.  Bar Works Tribeca and Yu entered into a "Wealth Builder Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Zhang signed a "Wealth Builder Sub-Lease Agreement," in which he subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $625 per month.  Zhang was provided a Certificate of Ownership dated June 22, 2016, signed by Black as Chief Executive of BWI.  As of March 2017, Bowen Zhang has not received the guaranteed payment.

145.    On or about September 27, 2016, Xuehua Liu invested three (3) units at Bar Works' 95 Chambers Street location (unit numbers: 9691, 8114, 8358) and paid the purchase price of $75,000.  Liu received a "Wealth Accelerator Lease Agreement" with the counterparty as Bar Works Chambers.  The Lease term is ten years.  She also received a "Wealth Accelerator Sub-Lease Agreement" with the counterparty as Bar Works Management, in which she subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $969 per month.[11]  She received a letter from Tahyira Cordner from Bar Works Inc Operations, dated September 27, 2016, acknowledging that Bar Works received the purchase price from her.  As of March 2017, Xuehua Liu has not received the guaranteed payment.

146.    On or about April 27, 2016, Paulo Denny Liu invested three (3) units at Bar Works' 47 7th Avenue South location (unit numbers: 8087, 7459, 9571) and paid the purchase

---

[11] Liu signed the Lease Agreement and the Sub-Lease Agreement.  However, Bar Works did not sign these two documents.

price of $75,000.  Bar Works 7th Avenue and Liu entered into a "Wealth Accelerator Lease Agreement."  The Lease term is ten years.  On the same date, Bar Works Management and Liu signed a "Wealth Accelerator Sub-Lease Agreement," in which Liu subleased the purchased workspaces to Bar Works Management in exchange for guaranteed profits in the amount of $969 per month.  Liu was provided a Certificate of Ownership, dated April 27, 2016, signed by Black as Chief Executive of BWI.  Liu also received a welcome letter from Tahyira Cordner from Bar Works Inc Operations, dated August 4, 2016, acknowledging Liu's investment in the Bar Works securities.  As of March 2017, Liu has not received the guaranteed payment.

### D.  The Misleading Prospectuses

147.    To sell Leases and Sub-Leases for particular Bar Works locations, Bar Works provided potential investors with one or more of various private placement memoranda specific to the relevant Bar Works location (the "Bar Works Lease Memoranda").  Bar Works also marketed its securities by using its website.

148.    Plaintiffs received brochures and Bar Works Lease Memoranda via electronic mail and reviewed the contents of Bar Works' websites before or around the time they purchased Bar Works securities.  As foreign investors, Plaintiffs did not live in the United States and had to review and rely on the contents of the prospectuses, brochures, or any marketing materials distributed and prepared by Defendants.

149.    Upon information and belief, Defendants authored, reviewed, and approved the Bar Works Lease Memoranda, brochures, and other marketing materials.   Either Black, a fictitious person created by Haddow, or Kinard signed Bar Works Lease Memoranda.

150.    Kyselova actively participated the marketing campaign of Bar Works.  She appeared in marketing materials of Bar Works, including showing up in a video clip touting Bar

Works' potential profitability and including herself in prospectuses as a director of Bar Works under the name of "Zoe Miller."

151.    Bar Works Lease Memoranda and other marketing materials contained false and misleading information and omitted material information.   Had investors, such as Plaintiffs, known the true financial state of Bar Works and the real decision-maker behind the Bar Works entities, they would not have purchased Bar Works securities.

**a.   Defendants Concealed Haddow's and Kyselova's Control of Bar Works Entities**

152.    Since the inception of Bar Works, Defendants have been claiming that Black and for a short time period in 2016, Kinard, were the chief executives for the Bar Works entities. The concealment was carried out so that Haddow's questionable past in the United Kingdom would not taint the image of Bar Works.

153.    In a press release dated September 8, 2015 (the "September 8 Press Release"), Bar Works announced the opening of its first location at 47 West 39th Street, New York, New York in October 2016.   This press release identified Black as Bar Works' founder and chief executive.   It also contained a quote from Black and claimed that "Jonathan and his team have already secured US$500,000 of funding from a Silicon Valley backer."

154.    The September 8 press release touted Black's purported experience: "Jonathan has a background in finance and start-up ventures.   He was a finance director/financial controller of two chains of bars in the UK (Regent Inns Plc – market value US$400m).   He has also set up a number of new ventures, including recently 'Car Share', a car sharing APP."

155.    The September 8 press release also touted another member of Bar Works' "Management Team": Chloe Miller.   She was introduced as an "Operations Executive" of Bar Works.   However, this is yet another attempt to conceal the identity of Kyselova.

156.    The press release claimed that Chloe Miller "has a background in retail and is an accomplished entrepreneur in the retail and web design space, having launched a number of successful web based companies. Chloe is responsible for the day to day operations of each unit, ensuring members receive top quality service and that membership of each unit is optimized."

157.    On approximately July 15, 2016, Bar Works issued another press release (the "July 15 Press Release") concerning Bar Works' purchase of a restaurant in San Francisco to create a West Coast Bar Works location.  The press release described Bar Works' management team, including Black as chief executive.

158.    The July 15 press release also contained two quotes purportedly from Black.

159.    The July 15 Press Release included Zoe Miller as Bar Works' operations executive.

160.    However, based on the SEC Complaint, "Zoe Miller" and "Chloe Miller" do not exist and they were pseudonyms used by Haddow's wife, Kyselova.

161.    Bar Works Lease Memoranda regarding its San Francisco location titled "Bar Works at Jack's" contained a "Letter from the Directors," purportedly signed by Black as "Chief Executive" of BWI.

162.    Bar Works Lease Memoranda regarding its 95 Chambers Street location titled "Bar Works @ Chambers Street" similarly included a "Letter from the Directors," purportedly signed by Black as "Chief Executive" of BWI.

163.    Starting from early 2017, Bar Works announced that Kinard took over Black as the chief executive for Bar Works entities.  Kinard also made several announcements to Bar Works investors as Bar Works' Managing Director.

164.    Kyselova has been identifying herself as "Zoe Miller" in the prospectuses.  The prospectuses omitted any mention of Kyselova's connection to Haddow.

165.    Haddow's name has never appeared in any of the Bar Works prospectuses, press releases, and other marketing materials or on Bar Works' website.

166.    These representations and omissions in Bar Works Lease Memoranda, press releases, and other marketing materials were false or misleading as alleged bellow.

167.    In reality, Haddow founded, controlled, and owned Bar Works and its subsidiaries and, based on the Government's Investigation, controlled all the bank accounts in BWI's and its subsidiaries' names with the assistance of Kyselova.

168.    Defendants created a non-existing person named "Jonathan Black" and went to great lengths to post a spurious LinkedIn profile for this fictitious person.  An internet journalist later on compared Black's LinkedIn profile photo with the LinkedIn profile photo for another LinkedIn user named Frank Jones and found out that these two images are exactly the same.

169.    Defendants also omitted Kyselova's close connection to Haddow and the fact that she misidentified herself in Bar Works' prospectuses and other marketing materials.

170.    By omitting Haddow's involvement and control of the Bar Works entities, Defendants concealed Haddow's previous involvement in similar fraudulent schemes.  By creating a fictional executive with certain background and experience, Defendants painted a rosy picture to the investors and made them believe that, under an experienced leadership, Bar Works can grow their investments substantially over the years.

**b.  Defendants Over Sold Bar Works Securities**

171.    Defendants sold more workspaces than existed in at least two locations in New York (39th Street and 7th Avenue) and one location in San Francisco (615 Sacramento Street).

172.    According to the SEC Complaint, the 39th Street location had fewer than 70 workspaces (not including communal meeting areas) that could be leased to investors.  Yet between October 2015 and January 2016, Bar Works sold 112 workspaces at this location.

173.    Similarly, the 7th Avenue location had 95 workspaces (not including communal meeting areas) that could be leased to investors.  Yet between February and May 2016, Bar Works sold 180 workspaces at this location.

174.    Defendants touted in the Bar Works Lease Memoranda for Bar Works' San Francisco location that 300 individual workspaces are available at that location.  The Memoranda also stated that the San Francisco location can fit in "approximately 500 fixed desks and accommodate up to 1,500 members."

175.    Plaintiffs conducted a site visit to Bar Works' San Francisco location (615 Sacramento Street) on June 12, 2017.  It is located in a 3-story building.  Plaintiffs took a tour of the second and third floor of this location guided by an onsite employee from Bar Works.  It is a rather small building with limited spaces.  Plaintiffs were informed by this employee that Bar Works rented the entire first floor to a restaurant owner.  Based on Plaintiffs' observation, Bar Works can accommodate no more than 40 workspaces for both the second and third floors combined (not including communal meeting areas).  Even if Bar Works had not rented out the first floor to a restaurant, but used it to set up individual workspaces, based on the similar layout of each floor of this building, Bar Works still could not have possibly accommodated 300 workspaces as stated in its Memoranda.

176.    Therefore, Defendants either sold investors non-existing workspaces or sold the same workspace to multiple investors at the same time.

**c.   Defendants Promised Investors Guaranteed Return and Profits that They Could not Deliver**

177.    Bar Works Lease Memoranda guaranteed investors the repayment of the entire principal amount of the investment at the end of the Leases' terms.

178.    Investors, such as Plaintiffs, are guaranteed annual income between 12.5% and 16% of the principal amount of their investment.[12]

179.    Investors, including Plaintiffs, are also guaranteed the right to share in future rent increases paid by third-party tenants.

180.    For example, Bar Works Lease Memoranda for Bar Works' 95 Chambers Street location contains the following sentence: "each lease will benefit from any rent increases derived from the work space.  That means *your minimum income will grow* as customer charges rise and *exceed the initial 14%-16% yield in the later years of the lease*."

181.    Defendants also did not place any pre-conditions on the monthly payments in the Memoranda.  They were guaranteed income to investors regardless whether Defendants could rent out the specific workspaces purchased by the investors.  In reality, Defendants pre-sold Bar Works securities for a specific location months before it started to generate any income for these workspaces.

182.    For example, Plaintiffs were informed by the Bar Works employee during the site visit in June 2017 that Bar Works just opened this location and would hold a launch party on June 15, 2017.  However, several Plaintiffs purchased Bar Works securities for the San Francisco location as early as August 2016, nearly ten months before Bar Works opened this location for business.  Bar Works was in the process of renovating the building during the entire ten months

---

[12] Bar Works offered 12.5% return for any investment for its San Francisco location based on a single workspace unit purchase.  Bar Works offered 14% - 16% return for its other locations based on the number of workspace units purchased by investors.

and was unable to rent any workspaces out at this location.  Yet, based on the Leases and Sub-Leases agreements and the Memoranda, Defendants needed to make monthly payments to Plaintiffs who purchased workspaces at Bar Works' San Francisco location during this time period.

183.    Furthermore, none of these assertions were presented as a projection or forecast. Instead, assertions made about future performance were stated as guarantees.  The rent payments were described as minimum return and the right to repayment of principal at the end of the lease term was absolute and promised without any qualification.

184.    None of these assertions in the prospectuses were accompanied by any meaningful cautionary statements.  Further, these assertions were made without the disclosure of any specific risks or any language or disclaimers.  In other words, none of the language in these prospectuses, if construed reasonably, bespeaks any caution with regard to these assertions.

185.    These assertions in the prospectuses were made without a reasonable basis and with the specific awareness of underlying facts, none of which were disclosed to investors, including, that Haddow commingled the investment funds (based on the Government Investigation), that the Bar Works entities did not have sufficient cash flow to pay (a) the minimum annual returns guaranteed to the investors, (b) the expenses incurred to acquire leaseholds for Bar Works' various locations, and (c) the expense of renovating these locations.

**d.  Defendants Falsely Presented to Investors that Bar Works Would Offer a Trading Platform for Investors to Sell Their Investments**

186.    Bar Works Lease Memoranda for different locations stated consistently that BWI would offer a "matched trade facility" to allow investors to sell their investments at any time they want.

187.    However, after Bar Works suspended its monthly payments to investors starting from March 2017, Bar Works ignored Plaintiffs' repeated requests that Plaintiffs wanted to use the promised trading platform to sell their investments.

188.    Based on Plaintiffs' knowledge, Defendants has never set up a "matched trade facility" to allow investors to trade investments freely.

**E.  The Ponzi Scheme Unravels**

189.    During the last quarter of 2016, Black was suddenly out of the investors' sight. Bar Works employed Kinard to take over Black's role.

190.    Starting from March 2017, Bar Works suspended the monthly payments to investors, including Plaintiffs.

191.    On April 11, 2017, Bar Works, through Kinard, told the investors that guaranteed minimum payments would be delayed due to difficulties with "banking facilities" as the result of a "large and growing volume of banking transactions" and a "broad international client base" that had caused a "significant increase in banking costs."

192.    On May 11, 2017, Bar Works, through Kinard, informed the investors that the payment delays were the result of banks being "nervous about Bar Works making many individual wire transfers around the world," and a determination that Bar Works' "liquidity was tied up."  Nonetheless, Kinard stated that guaranteed monthly payments would resume "shortly after June 1, 2017, when other Locations of Bar Works were scheduled to launch."

193.    Upon the urges of Plaintiffs, Bar Works also told Plaintiffs that the payment suspension was caused by bank's compliance audit specifically targeted at the Chinese citizens.

194.    Approximately two weeks later, Bar Works, through Kinard, admitted for the first time that Kinard was actually employed by Bar Works in 2016 to "execute a difficult restructuring" as a result of "serious operational problems."

195.    Kinard further claimed that while he was "leaving the company," the guaranteed monthly payments would resume according to a timetable that would be determined by unspecified managers of Bar Works.

196.    In reality, as a result of the commingling of investment funds, Bar Works was running out of cash flow to pay (a) the minimum income that had been promised to each investor, (b) the expenses of acquiring leaseholds for various locations, and (c) the expense of renovating some of its locations.

197.    On June 30, 2017, the SEC filed fraud charge against Haddow, BWI, and Bar Works 7th Avenue, Inc. in the Southern District of New York, alleging that the defendants violated the federal securities laws.  Specifically, the SEC stated that the defendants distributed offering materials to investors that contained false and misleading information, misrepresenting key facts of Bar Works' operations and profitability.  On the same day, The DOJ also revealed that it charged Haddow with two counts of wire fraud, each carrying a maximum prison sentence of 20 years.

198.    As of July 2017, Plaintiffs cannot assess Bar Works' website and all Bar Works locations stopped operating.

**F.  Defendants Breached the Contracts with Plaintiffs**

199.    Defendants failed to perform under the contracts with Plaintiffs for the following reasons: (1) failed to make required rental payments as agreed to in Plaintiffs' contracts; and (2) failed to offer a "matched trading facility" to allow Plaintiffs to sell their investments freely.

### G.  Defendants Haddow and Kyselova Dominated and Controlled the Bar Works Entities

200.    Defendants Haddow and Kyselova controlled each of the Bar Works Entities and exercised complete domination of these entities as alleged herein.  Defendants Haddow and Kyselova used such domination to commit a wrong against Plaintiffs and cause Plaintiffs' injuries.

201.    Based on the Government Investigation, Defendants Haddow and Kyselova caused the Bar Works Entities to restructure and reconfigure in order to avoid liability under each of the Plaintiffs contracts.

202.    According to the Government Investigation, Defendants Haddow and Kyselova also caused the Bar Works Entities to transfer assets without proper and/or due consideration, to unknown accounts.

203.    According to the Government Investigation, Defendants Haddow and Kyselova used Plaintiffs' investment funds for their personal expenditures, wholly unrelated to any legitimate business purpose.

204.    The Bar Works Entities failed to observe corporate formalities in their transfer of business assets to avoid their creditors.

### CLAIMS FOR RELIEF

**Count One**
**For Violations of Section 12(a)(1) of the Securities Act of 1933**
**(Against All Defendants)**

205.    Plaintiffs incorporate Paragraphs 32 through 204 by reference herein.

206.    This cause of action is asserted against all Defendants.

207.    Plaintiffs purchased unregistered securities issued by Defendants.  Based on the SEC Complaint, these securities constitute a "security" under federal law. 15 U.S.C. § 78c(a)(10).

208.    When Defendants sold these securities to Plaintiffs, they failed to register the securities with the SEC, which constitutes a violation of the Securities Act of 1933, 15 U.S.C. § 77e.

209.    All offers to sell and sales that are the subject of this action involved the use of the mails or other means or instrumentalities of interstate commerce.

210.    Defendants are strictly liable to Plaintiffs for the refund of all consideration paid by Plaintiffs to purchase these unregistered securities pursuant to 15 U.S.C. § 77l(a)(1).

211.    Based upon the foregoing, Defendants are jointly and severally liable to Plaintiffs for the consideration paid to invest in BWI and its subsidiaries, less the monthly payments received.

## Count Two
### For Violations of Section 12(a)(2) of the Securities Act of 1933
### (Against All Defendants)

212.    Plaintiffs incorporate Paragraphs 32 through 204 by reference herein.

213.    This cause of action is asserted against all Defendants.

214.    Plaintiffs purchased the unregistered securities from Defendants.

215.    All offers to sell securities and sales of securities to Plaintiffs involved the use of the mails or other means or instrumentalities of interstate commerce.

216.    Plaintiffs received and reviewed the prospectuses and other marketing materials in connection with the offering of the securities distributed by Defendants before purchasing the unregistered securities.

217.    The prospectuses and other marketing materials were false and misleading and omitted material information as they failed to disclose (a) that Haddow commingled investments funds and that the Bar Works entities did not have sufficient cash flow to pay the minimum annual returns guaranteed to the investors and other necessary expenses to operate the entities; (b) that Defendants did not intend to establish and operate a trading facility as promised to investors; and (c) that Haddow, who was disqualified in the United Kingdom to serve as a director and was adjudicated to be the promoter of illegal investments in a Ponzi scheme, created, owned, and controlled BWI and its affiliates.   Kyselova, Haddow's wife, assisted Haddow in controlling the Bar Works entities.

218.    Each misrepresentation and omission in the prospectuses was material in that any reasonable investor would have considered the misrepresentation and/or omission to be important information when making investment decisions.

219.    Defendants failed to include any cautionary statements in the prospectuses.

220.    Defendants also failed to disclose any of the material facts omitted from the prospectuses or correct any misrepresentations after Plaintiffs purchased the unregistered securities.

221.    Plaintiffs relied upon the material misrepresentations or omissions in purchasing the unregistered securities.   Plaintiffs would not have purchased these securities but for the material misrepresentations and omissions.

222.    Plaintiffs suffered losses in purchasing the unregistered securities.

223.    Based upon the foregoing, Defendants are liable to Plaintiffs for all losses causally related to the material misrepresentations and omissions as contained in the prospectuses and other marketing materials.

**Count Three**
**For Violations of Section 10(b) of the Exchange Act of 1934 and Rule 10b-5 Promulgated**
**Thereunder**
**(Against All Defendants)**

224.     Plaintiffs incorporate Paragraphs 32 through 204 by reference herein.

225.     This cause of action is asserted against all Defendants.

226.     Plaintiffs purchased the unregistered securities from Defendants and received and

reviewed the prospectuses and/or other marketing materials from Defendants.

227.     All offers to sell securities and sales of securities to Plaintiffs involved the use of

the mails or other means or instrumentalities of interstate commerce.

228.     The prospectuses contained false and misleading statements and omitted material

information as they failed to disclose (a) that Haddow commingled investments funds and that

the Bar Works entities did not have sufficient cash flow to pay the minimum annual returns

guaranteed to the investors and other necessary expenses to operate the entities; (b) that

Defendants did not intend to establish and operate a trading facility as promised to investors; and

(c) that Haddow, who was disqualified in the United Kingdom to serve as a director and was

adjudicated to be the promoter of illegal investments in a Ponzi scheme, created, owned, and

controlled BWI and its affiliates.  Kyselova, Haddow's wife, assisted Haddow in controlling the

Bar Works entities.

229.     Each false and misleading statement and omission in the prospectuses was

material in that any reasonable investor would have considered the misrepresentation and

omission to be important information when making investment decisions.

230.     Based upon the false and misleading statements and omissions as contained in the

prospectuses, Defendants had a duty at all times to disclose material information that were

misrepresented and omitted from the prospectuses.  However, Defendants failed to disclose any

of the material facts omitted from the prospectuses or correct any misrepresentations after Plaintiffs purchased the unregistered securities.

231.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Defendants' material misrepresentations and omissions were done knowingly or recklessly and for the purpose and effect of concealing Bar Works' operating condition and future business prospects from the investors.

232.    Plaintiffs relied upon the false and misleading statements and material omissions as contained in the prospectuses in purchasing the unregistered securities.

233.    Plaintiffs would not have purchased any of the securities but for the material misrepresentations and omissions.

234.    The material misrepresentations and omissions are causally related to the losses that Plaintiffs have suffered.

235.    Plaintiffs' purchase of the securities was the result of deception and fraudulent concealment of material information, and there was at all times an intent to deceive, manipulate, or defraud on the part of Defendants.

236.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

237.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their respective purchases of the unregistered securities.

**Count Four**
**For Breach of Contract under the New York State Law**
**(Against All Defendants)**

238.    Plaintiffs incorporate Paragraphs 32 through 204 by reference herein.

239.    Plaintiffs have duly performed all the conditions required under their respective contracts, namely, funding their investments in purchasing the Bar Works securities, as set forth above.

240.    Defendants failed and neglected to perform as required under each contract.

241.    Defendants owe Plaintiffs one hundred and twenty five percent (125%) of Plaintiffs' aggregate investment amount, pursuant to the terms of Plaintiffs' contracts, plus all past due rental payments and reasonable attorneys' fees relating to this action.

242.    Plaintiffs have been damaged for amount as stated above.

**Count Five**
**For Unjust Enrichment under the New York State Law**
**(Against All Defendants)**

243.    Plaintiffs incorporate Paragraphs 32 through 204 by reference herein.

244.    Defendants received the aggregate amount of $7,495,000.00 from Plaintiffs without consideration to Plaintiffs for the amount transferred.

245.    Defendants' retention of the $7,495,000.00 (minus any payments Plaintiffs already received) is unjust and has operated to Plaintiffs' detriment and caused Plaintiffs to suffer monetary and other damages.

246.    Plaintiffs are entitled to a judgment against Defendants in the amount of at least $7,495,000.00 (minus any payments Plaintiffs already received) with interest thereon.

**Count Six**
**For Piercing the Corporate Veil under the New York State Law**
**(Against Defendants Haddow and Kyselova)**

247.    Plaintiffs incorporate Paragraphs 32 through 204 by reference herein.

248.    Defendants Haddow and Kyselova were in direct and complete control and domination of the finances, policies, activities, business practices and transactions of the Bar Works Entities when Plaintiffs entered into their contracts with the Bar Works entities.  Each of the Bar Works Entities had no separate mind, will or existence of its own apart from Defendants Haddow and Kyselova.

249.    Each of the Bar Works Entities is the alter ego of Defendants Haddow and Kyselova.

250.    Defendants Haddow and Kyselova blatantly disregarded the corporate form of the Bar Works Entities, and utilized and manipulated the Bar Works Entities for their personal advantage.

251.    Defendants Haddow and Kyselova exercised total and exclusive domination over the Bar Works Entities and made decisions for the Bar Works Entities.  Such control and domination has been used by the Bar Works Entities to commit wrongs against Plaintiffs, including, but not necessarily limited to, misappropriation and conversion of Plaintiffs' funds for personal use.

252.    Additionally, and in the alternative, there was such a unity of interests and ownership between and among Defendants Haddow and Kyselova and the Bar Works entities that the independence of the Bar Woks Entities had in effect ceased or had never even begun.

253.    Accordingly, adherence to the fiction of a separate identity of Defendants Haddow and Kyselova and the Bar Works Entities would only defeat justice and equity.

254.    Therefore, the corporate veil must be pierced and Defendants Haddow and Kyselova must be made liable to the same extent as the Bar Works Entities.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for the following relief:

1. Compensatory damages;

2. Restitution of unjust enrichment obtained and retained by Defendants;

3. Punitive damages as allowed by law;

4. Attorneys' fees and costs;

5. Pre-judgment and post-judgment interest on Plaintiffs' damages as allowed by law;

6. Entering an order allowing the piercing of Defendants' corporate veil, and finding Defendants Haddow and Kyselova personally liable for the obligations of Bar Works entity Defendants; and

6. Such other and further legal and equitable relief as the Court, in its discretion, may deem appropriate.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on all claims and issues triable by right to a jury.


Dated: July 17, 2017

<div style="margin-left:40%">

Respectfully submitted,


By: /s/ Bing Ryan

**MAGTONE LAW, LLP**
(DBA Lai, Liu & Li, LLP in New York)

Bing Zhang Ryan (228641)*

</div>

bingzhangryan@magstonlaw.com4633 Old Ironsides Drive, Suite 160
Santa Clara, California 95054
Phone: (925) 257-3097

Wei Zhang
wzhang@magstonelaw.com
1001 Avenue of the Americas, Suite 1105
New York, NY 10018
Phone: (212) 813 2888

*Attorneys for Plaintiff*

*\*Pro Hac Vice Application to be Submitted*